**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruben Godoy,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-23-02000-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Ruben Godoy's Application for Supplemental Security Income under the Social Security Act. Plaintiff filed a Complaint and an opening brief with this Court seeking review for the denial of benefits. (Docs. 1 & 13.) Defendant, Commissioner of the Social Security Administration ("Commissioner") submitted a response brief (Doc. 18), and Plaintiff submitted a reply. (Doc. 19.) The Court has reviewed the briefs and administrative record (Docs. 7 & 8, "AR") and now reverses in part and remands for further proceedings.

**I.    BACKGROUND**

Plaintiff filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on March 7, 2017, alleging disability beginning July 30, 2007. (AR. at 16, 249, 256.) Plaintiff later amended his alleged onset date to March 7, 2017, and his Title II application was dismissed. (AR. at 401, 926.) Plaintiff's applications were denied initially on June 6, 2017 (AR. at 89, 99) and upon reconsideration. (AR. at 115, 118.) Plaintiff requested a hearing, held on August 14, 2019 (AR. at 56), and the

Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application. (AR. at 13.) The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became final. (AR. at 1.) Following the unfavorable decision, Plaintiff filed an appeal with this Court.

This Court issued an order and entered judgment reversing and remanding the ALJ's determination on February 8, 2022. (AR at 1016, 1017.) Plaintiff testified at a second hearing on March 1, 2023 (AR. at 952), and ALJ entered a partially favorable ruling. (AR. at 923.) The Appeals Council denied Plaintiff's request for review, and the ALJ decision again became final. (AR. at 914.) Following the partially favorable decision, Plaintiff filed this appeal.

After considering the medical evidence and opinions, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 7, 2017, the amended alleged onset date. (AR. at 929.) The ALJ found that Plaintiff had the following severe impairments: (1) bilateral hip osteoarthritis, (2) status post bilateral hip replacements, (3) knee osteoarthritis, (4) degenerative disc disease, (5) status post surgeries, (6) diabetes, and (7) obesity. (*Id.*) The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (AR. at 931.)

In assessing the Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff's symptom testimony was not entirely consistent with the evidence of record. (AR. at 932–33.) With respect to medical opinions, the ALJ gave partial weight to the opinion of the initial State agency reviewing consultant and assigned little to no weight to the remaining opinions, including a joint opinion from Plaintiff's physical therapist, Shaun Almaria, PT, and Plaintiff's orthopedic surgeon, Russell Meldrum, M.D. (AR. at 937–38.) The ALJ determined that prior to October 1, 2022, the date Plaintiff became disabled, he had the RFC to perform light work except he can lift and/or carry up to twenty pounds occasionally and ten pounds frequently; can stand and/or walk four hours in an eight-hour day and sit for six hours in an eight-hour day, with normal breaks; can frequently operate

foot controls bilaterally; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, stoop, crouch, crawl, and kneel; can occasionally balance; can work with occasional exposure to excessive vibration, dangerous, moving machinery, and unprotected heights; and required a handheld cane for uneven/slippery terrain or walking greater than one-hundred yards in one stretch. (AR. at 932.) The ALJ additionally determined that since October 1, 2022 claimant had the RFC to perform sedentary work except that he can frequently operate foot controls bilaterally; can never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs, stoop, crouch, crawl, and kneel; can occasionally balance; can work with occasional exposure to excessive vibration, dangerous, moving machinery, and unprotected heights; and required a cane for uneven/slippery terrain or walking greater than one-hundred yards in one stretch. (AR. at 938–39.)

Relying on the testimony of a vocational expert, the ALJ determined that since March 7, 2017, Plaintiff could not perform past relevant work but could perform the jobs of office helper, ticket seller, or storage facility clerk. (AR. at 940–41.) The ALJ thus concluded that Plaintiff was not disabled since March 7, 2017. However, the ALJ found that beginning on October 1, 2022, there were no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR. at 941.) Consequently, the ALJ determined that the Plaintiff was not disabled prior to October 1, 2022, but became disabled on that date. (*Id.*)

**II.  LEGAL STANDARD**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the ALJ's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating

a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close. *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the ALJ at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv), (e). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (f). If not, the claimant is disabled. *Id.*

## III. DISCUSSION

Plaintiff raises two arguments: (1) the ALJ erred in rejecting the opinion of his treating physicians, and (2) the ALJ erred in rejecting Plaintiff's symptom testimony.[1]

---

[1] Both of Plaintiff's arguments relate to the ALJ's finding of Plaintiff not being disabled between March 07, 2017, and October 1, 2022.

- 4 -

(Doc. 13 at 1.) Plaintiff now requests this Court remand his case for a computation of benefits under the credit-as-true rule. (*Id.* at 27.) Commissioner asks the Court to affirm or, if the Court finds error, to remand for further administrative proceedings. (Doc. 18 at 14–15.)

### A.     Medical Opinions

Plaintiff first argues that the ALJ failed to provide specific and legitimate reasons for rejecting an opinion from his physical therapist, Shaun Almaria, PT, which was confirmed by his orthopedic surgeon, Russell Meldrum, M.D. (Doc. 13 at 15.)

Plaintiff filed his claim on March 7, 2017 (AR. at 16.) For disability benefit applications filed prior to March, 27, 2017, SSA regulations classify medical opinion sources into three types: (1) treating physicians (who treat a claimant), (2) examining physicians (who examine but do not treat a claimant), and (3) non-examining physicians (who neither treat nor examine a claimant). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Each type of medical opinion is accorded a different weight. 20 C.F.R. §§ 404.1527, 416.927. Generally, more weight should be given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant due to their unique position to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020). If an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider several additional factors in weighting the source's opinion including the nature of the relationship, length of treatment, frequency of examination, and the physician's specialization. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If evidence contradicts a treating physician's opinion, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting that physician's opinion. *E.g.*, *Coleman*, 979 F.3d at 756; *see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In January 2019, Shaun Almaria, Plaintiff's treating physical therapist, completed a Medical Assessment of Ability to Do Work Related Activities. (AR. at 910.) Mr. Almaria's assessment was later reviewed and confirmed by Dr. Meldrum, Plaintiff's treating

orthopedic surgeon. (AR. at 913.) Mr. Almaria opined that Plaintiff could sit for ten minutes or stand/walk for five minutes at a time and could sit or stand/walk for a total of two hours each in an eight-hour day. (AR. at 910.) Plaintiff could rarely lift or carry any amount of weight, could rarely stoop, squat, crawl, climb or reach, could continuously use his hands for handling, pushing, and fingering and could only use his right foot for repetitive movements. (AR. at 910–11.) Mr. Almaria placed total restrictions on exposure to unprotected heights, moving machinery, occupational driving, dust, fumes, gases, and marked changes in temperature or humidity. (AR. at 911.) Mr. Almaria opined that Plaintiff was severely limited by pain and fatigue, and he indicated that his opinion was based on his medical records for Plaintiff, information in outside records, clinical observations, and his knowledge of Plaintiff's impairments. (AR. at 912.) At the end of his opinion, Mr. Almaria commented that Plaintiff had an antalgic gait due to weakness in his glutes and quadriceps, as well as decreased range of motion and strength in his lower extremities. (*Id.*)

The ALJ assigned the opinion of Mr. Almaria and Dr. Meldrum no weight finding it as only somewhat supported by objective findings. (AR. at 938.) Specifically, the ALJ rejected the opinion because the comment left by Mr. Almaria—that Plaintiff had an antalgic gait due to weakness in his lower extremities—was inconsistent with February 2019, March 2019, and April 2020 musculoskeletal evaluations finding that the Plaintiff had full extremity strength, a normal gait, and intact coordination and sensation. (*Id.* (citing AR. at 903, 907–08, 1381–82, 1407).)

An ALJ may reject a physician's opinion either when the opinion lacks objective support or where there is a contradiction between evidence and the opinion as long as the ALJ gives specific and legitimate reasons for this rejection. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The February 2019 record shows that Plaintiff had a normal gait for both the right and left leg rather than an antalgic gait; and the other cited records additionally support that Plaintiff had normal strength (assigning it a five) for both the right and left flexors, extensors, abductors, adductors, as well as internal and external rotators. (AR. at 903, 907–08, 1381–82). Plaintiff contends that this

contradiction alone does not rise to the level of substantial evidence required. (Doc. 13 at 17.) The Court agrees.

"[E]ven when contradicted, a treating physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Orn*, 495 F.3d at 633). Without a detailed summary of the facts and conflicting evidence, the ALJ does not build a sufficient "logical bridge" to explain why the ALJ, rather than the doctors, are correct. *See id.*; *see also Vasquez v. Astrue*, No. 11-CV-2406-PHX-GMS, 2013 WL 491977, at *5 (D. Ariz. Feb. 8, 2013) (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). The contradiction to the comment alone does not sufficiently provide substantial evidence that Mr. Almaria and Dr. Meldrum's entire conclusions should be given no weight.

Firstly, even if Plaintiff did possess a normal gait and full range of motion, that does not contradict Mr. Almaria's opinion that Plaintiff could not stand or walk for more than two hours, nor does it affect the other limitations noted by Mr. Almaria. *See Pierce v. Astrue*, 382 F. App'x 618, 619 (9th Cir. 2010) (A "finding that [Plaintiff] had a normal gait and full range of motion . . . simply demonstrates that she could do *some* walking and standing; it in no way indicates that she could walk or stand for extended periods . . . .").

But even more so, the records the ALJ cites to appear to support Mr. Almaria's conclusions as to the Plaintiff's pain and limitations. The February 2019 record that the ALJ cites establishes the Plaintiff has been unable to do any activity without significant pain, that he was experiencing localized pain in the lateral aspect of his right hip which wraps to the anterior of his knee, and that as a result, his right knee was giving out. (AR. at 902, 904.) Further, the March 2019 record additionally supports the Plaintiff having significant pain and significant pelvic obliquity which could be fixed but without significant pain relief. (AR. at 906, 908.) The April 2020 record likewise supports Mr. Almaria and Dr. Meldrum's opinion. That record establishes Plaintiff was experiencing symptoms of weakness, poor balance, joints giving way and aggravating factors of

walking, sitting, standing, stairs, kneeling, squatting, twisting, or bending. (AR. at 1380.) It also notes that the pain is assessed as an 8 on the VAS pain scale with sharp, stabbing, and aching pain that was getting worse. (*Id.*) By not providing specific and legitimate reasons supported by substantial evidence to reject Mr. Almaria and Dr. Meldrum's opinion, the ALJ erred.

Plaintiff additionally contends that the ALJ committed error by assigning the State agency consultant, Nadine Keer, D.O., "partial weight" over Plaintiff's treating physicians who were assigned "no weight." (Doc. 13 at 18–19.) An ALJ has the responsibility to consider prior administrative medical findings, given that State medical and psychological consultants are experts in disability evaluations. 20 C.F.R. § 404.1513(a)(5). An ALJ can appropriately rely on such an opinion when it is more consistent with the record than the opinion of an examining or treating physician. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).

Plaintiff argues that Dr. Keer did not have the benefit of reviewing several significant experiences in reaching their opinion including Plaintiff's right hip replacement, (AR. at 531), left knee surgery, (AR. at 784), left hip replacement, (AR. at 896, 904), and lumbar spine imaging confirming severe stenosis and nerve root impingement. (AR. at 640–41.) Typically, it is not error to assign more weight to an opinion from a consultant who did not review the whole record. *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020). By considering all the evidence before them at the time, the non-examining expert satisfies all the requirements in 20 C.F.R. § 404.1527(c)(3). *Id.*

Consequently, the question properly becomes whether the subsequent evidence regarding the Plaintiff's limitations was still consistent with Dr. Keer's opinion. However, because the ALJ erred in completely rejecting Mr. Almaria's opinion, the Court need not determine whether the ALJ additionally erred in the weight assigned to Dr. Keer's opinion. Because the two opinions run contrary to each other regarding the Plaintiff's appropriate limitations, the weight of Mr. Almaria's opinion naturally affects the weight of Dr. Keer's. As a result, on remand, the ALJ must not only reconsider the weight assigned to Mr.

Almaria and Dr. Meldrum's opinion but also the weight assigned to Dr. Keer's opinion.

### B. Symptom Testimony

Plaintiff next argues that the ALJ failed to provide clear and convincing reasons to reject his symptom testimony. (Doc. 13 at 20.)

To evaluate a claimant's symptom testimony, an ALJ engages in a two-step analysis. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that could reasonably cause a claimant's symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). If there is no evidence of malingering, an ALJ then may reject a claimant's symptom testimony "only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15. If "the evidence is susceptible to more than one rational interpretation[,]" the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (superseded by statute on other grounds).

In his hearing testimony and function reports, Plaintiff testified that his hip and knee impairments limited his ability to work by causing difficulty walking and lifting. (AR. at 72, 309, 352, 963.) Plaintiff reported multiple surgeries and using a prescribed cane and sometimes a walker, and stated he could not sit or stand for long periods of time. (AR. at 70–71, 310, 347, 960–61, 963). In addition, Plaintiff testified that he would frequently have to lay down because of the pain. (AR. at 73–74, 304, 347, 963–64.)

The ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely supported with the evidence of record prior to October 1, 2022. The ALJ based her decision on the objective medical evidence and diagnostic findings, Plaintiff's treatment, and Plaintiff's daily activities.

#### 1. Objective Medical Evidence and Diagnostic Findings

An ALJ may consider objective medical evidence but may not use a lack of such evidence as the sole basis to discount a claimant's testimony. *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ noted that in March 2017, Plaintiff reported right hip pain and some ongoing left hip pain but had no reduced range of motion and was feeling better by April and May due to physical therapy despite ongoing hip pain and left knee clicking. (AR. at 478, 496, 503.) Further, the ALJ noted that after Plaintiff's right hip replacement surgery in July 2017, Plaintiff reported that he was doing well and by August was ambulating with a normal gait and full lower extremity strength and sensation. (AR. at 567, 569–71.)

Plaintiff reported an onset of right knee pain in September 2017, but also reported that his pain would improve when he would begin to move for the day and—at the same time—denied any back or neck pain. (AR. at 574–75.) The ALJ noted that after a motor vehicle accident in February 2018, Plaintiff had a normal range of motion in the back, full strength in both lower extremities, and scans only showed mild degenerative changes. (AR. at 620–21.) Furthermore, despite Plaintiff's report of left knee pain, he could ambulate normally with a normal gait and with full strength in his lower extremities, and at times reported improvement with his left knee. (AR. at 635, 868–70, 872, 883.)

Plaintiff underwent a left hip replacement surgery in November 2018 and the ALJ noted that despite right hip pain, Plaintiff was walking with a normal gait, only slightly impaired hip range of motion, and full strength and sensation. (AR. at 903, 907–08, 1381–82.) In August 2020, Plaintiff reported to his pain management provider that he experienced significant pain in his left knee after an injection. (AR. at 1275.) The ALJ noted that into 2022, Plaintiff showed full strength in upper and lower extremities, with normal tone, coordination, sensation and gait, and was able to briskly walk long distances on a recent trip to Las Vegas. (AR. at 1320, 1407.)

In April of 2021, Plaintiff was diagnosed with diabetes, but denied related issues and in July 2022, his A1C level was improved, and his diabetes was reported to be controlled and asymptomatic. (AR. at 1212–13, 1341.) The ALJ noted that she considered the Plaintiff's obesity both alone and in combination with the other impairments. (AR. at 935.)

The ALJ also noted that there is no support for Plaintiff's left leg numbness. The Court agrees with Plaintiff that regarding this, the ALJ's reasons do not rise to the level of clear and convincing. The record the ALJ cites to and additional evidence in the record support that Plaintiff at time had numbness in his left leg and foot. (AR. at 845, 883, 906–07, 1352–54.) Any error regarding this however is likely harmless as the ALJ seemingly took this into account in finding Plaintiff should avoid foot controls. (AR. at 937.) Plaintiff also attests that he did in fact have a discrepancy in the length of his left leg compared to his right, contrary to the ALJ's finding the discrepancy was minimal. (Doc. 13 at 23.) The same record the Plaintiff cites to however not only establishes that the discrepancy was minimal, but also that shoe modifications would be unnecessary. (AR. at 908–09.)

Where the "evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's conclusion. *Tommasetti*, 533 F.3d at 1038. Accordingly, the ALJ did not err in determining that Plaintiff's testimony was inconsistent with the objective medical evidence.

### 2. Treatment Record

An ALJ may also consider the effectiveness or adverse side effects of medication and treatment. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Here, the ALJ found that Plaintiff treated his pain conservatively using lidocaine, cold and hot packs, ibuprofen, diclofenac, and occasional oxycontin. (AR. at 484, 487, 599, 607, 633, 647, 704–08, 817–18.) Regarding the cane Plaintiff testified to using, the ALJ found that Plaintiff used the device post-operatively, but only occasionally or not at all after, and even that he was not presenting with a cane as recently as three weeks after surgery. (AR. at 880, 969, 1197, 1200) Despite this, the ALJ gave the benefit of the doubt to Plaintiff because he did occasionally present to doctors' visits with a cane. (AR. at 849, 902, 904, 969.)

The ALJ recognized that Plaintiff testified to debilitating side effects from medication. (AR. at 970.) However, there was not sufficient evidence in the record establishing that he reported the symptoms to his doctors to the extent alleged. (AR. 937.) The ALJ further noted that a recent injection had provided a significant improvement to

the pain in his knee. (AR. at 1275.) The ALJ notably did not mention all of the treatment that Plaintiff underwent. Plaintiff was also given several muscle relaxants, Amitriptyline, and Trazadone. (AR. at 818, 829, 833, 1283–84.) That the Plaintiff took additional medications, however, does not completely negate the ALJ's conclusion that the treatment was conservative.

Plaintiff additionally contests that the ALJ did not consider the three surgeries that Plaintiff had undergone. The Court finds that the ALJ did account for all three of the Plaintiff's surgeries. (AR. at 933–34.) Moreso, with each surgery the ALJ also noted that the Plaintiff had overall improvements in his condition following surgery, though remaining symptoms were treated conservatively. (AR. at 567, 569–71, 731, 883.) Certainly, conservative treatment can include successful surgeries and physical therapy. *Fry v. Berryhill*, 749 Fed. App'x 659, 660–61 (9th Cir. 2019). The Court agrees with the ALJ that evidence in the record supports the success of the left knee and right hip surgeries but disagrees as it relates to the left hip replacement. Treatment notes support that despite the left hip surgery, Plaintiff experienced continuing and increasing symptoms following the surgery. (AR. at 896, 899, 902.) Because the surgery was not successful, it does not support the claim that it was conservative. *See Garrison*, 759 F.3d at 1015.

Despite this, the ALJ did properly conclude that Plaintiff utilized conservative treatment for the pain in his back and knees; that Plaintiff occasionally did not need an assistive device to walk; that injections were largely successful in pain relief; and that there was no evidence in the record to support that medication had debilitating effects to the extent Plaintiff alleged. Such reasons are sufficiently clear and convincing to discredit the Plaintiff on that basis.

### 3. Daily Activities

Finally, an ALJ may properly determine that a claimant's daily activities detract from a claimant's credibility if those activities are inconsistent with other testimony, are exaggerated, or indicate capacities that are transferable to a work setting on a sustained basis. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). Even when daily

activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113. The ALJ noted that Plaintiff could bathe, take care of grooming and self-hygiene, feed and dress himself, get his granddaughter ready for school, (AR. at 516.) Plaintiff additionally took a trip to Las Vegas where he was able to walk briskly. (AR. at 1407.) Finally, Plaintiff reported exercising three to four times a week. (AR. at 849, 853, 855, 857, 861, 865, 869, 873.)

The ALJ improperly discounted Plaintiff's testimony on the basis of exercise; the records indicate that Plaintiff's reports of exercise have not been reviewed since March 2013, almost four years before the alleged onset date. (*Id.*) In several of the same records, Plaintiff was recovering from surgeries, was minimally weightbearing, or was having difficulty using his hips or knees. (AR. at 854, 868, 872.) As for the ALJ's additional reasons, although the ALJ did not determine that such activities are transferable to a work setting, such a determination is only one method to discredit a claimant's testimony. In the present case, the ALJ provided sufficient reasons that Plaintiff's daily activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112–13. As such, the ALJ did not err in discounting Plaintiff's testimony on this basis.

The Court finds that the ALJ properly considered the objective medical evidence in tandem with Plaintiff's treatment history and daily activities and did not err in discounting Plaintiff's symptom testimony.

**C.     Credit as True Rule**

Plaintiff contends that the ALJ's errors require this Court to remand his case for a computation of benefits under the credit-as-true rule. (Doc. 13 at 27.) The ordinary remedy for reversable error in a proceeding is to remand the case for further administrative proceedings. In rare circumstances, however, the Court may apply the credit-as-true rule when three conditions are met. *Garrison*, 759 F.3d at 1020. First, the record must be fully developed, and further administrative proceedings would not be useful to resolve ambiguities or conflicts. *Id.; Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101

(9th Cir. 2014). Second, the ALJ must have failed to give "legally sufficient reasons for rejecting evidence," including subjective testimony and medical opinions. *Garrison*, 759 F.3d at 1020. Third, if the discounted or rejected evidence was credited as true, the ALJ would be required to find that the Plaintiff is disabled. *Id.*

Here, the ALJ did fail to provide legally sufficient reasons to reject Mr. Almaria and Dr. Meldrum's opinion. However, even if there were no further conflicts in the record regarding that opinion, there is an inherent conflict with the earlier opinion of Dr. Keer, which the ALJ assigned partial weight to. Notably, the opinion of Dr. Keer occurred in May 2017 and conflicts with Mr. Almaria's January 2019 conclusion. Even if the Court were to credit Mr. Almaria's opinion as true, it would be required to find Plaintiff disabled as of January 2019; the conflict between the two opinions and an ambiguous question of Plaintiff's disability for the period between March 2017 and January 2019 would remain. Further proceedings would thus be useful to reassess the weight assigned to the medical source opinions in light of this conflict.

Accordingly,

**IT IS ORDERED** that the March 20, 2023 decision of the ALJ (AR. at 926–42) is reversed in part, as discussed herein.

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further administrative proceedings consistent with this Order.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to enter judgment in favor of Plaintiff and close this case.

Dated this 16th day of September, 2024.

Michael T. Liburdi
United States District Judge